THE PEOPLE OF THE STATE OF NEW YORK ex rel. DALLAS B. PRATT, Appellant, Respondent, *v.* HENRY M. GOLDFOGLE and Others, as Commissioners of Taxes and Assessments of the City of New York, Respondents, Appellants. (Moneyed Capital Taxes of 1923.)

First Department, July 6, 1925.

Taxation — tax on moneyed capital coming into competition with business of National banks — relator's firm is engaged in private banking, commission and investment business — in part, money used in said business comes into competition with business of National banks — relator cannot escape taxation merely because it is impossible to determine exact amount of capital coming into competition with business of National banks — from total capital of relator's firm there must be deducted deposits, tax exempt securities, percentage that debts bear to assets and value of Stock Exchange seat — relator's interest in balance remaining is taxable.

Money invested by the relator as partner in a firm conducting a private banking, commission and investment business which, among other activities, uses its capital in discounting commercial paper, making loans on personal security with deposit of collateral, and dealing in foreign exchange, is taxable in so far as it is thus used, on the basis that it comes into competition with the business of National banks.

The fact that it is impossible to ascertain the exact amount of the capital of the relator's firm which actually comes into competition with the business of National banks, will not permit the relator to escape taxation, for it is sufficient if the amount so coming into competition with the business of National banks is ascertained with reasonable exactness.

There must be deducted from the total assets of the firm the amount of the deposits, the amount of the tax exempt securities, the percentage that the liabilities bear to the assets, and the value of a Stock Exchange seat owned by the relator's firm. The balance will be considered as money coming into competition with the business of National banks, and that portion which represents the relator's interest in the firm is taxable against the relator.

CROSS-APPEALS by the relator, Dallas B. Pratt, and the defendants, Henry M. Goldfogle and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of December, 1924, in certiorari proceedings brought to review the assessments on property of the relator, under the Laws of 1923, chapter 897, amending the Tax Law and known as the Moneyed Capital Tax Law, directing that the assessment of $1,000,000 made by the defendants for the purposes of taxation for the year 1923, against the relator on the value of moneyed capital owned or held by the relator coming into competition with the business of National banks, be reduced to the sum of $149,205.57.

Appeal by the relator, Dallas B. Pratt, from an order entered in said clerk's office on the 26th day of December, 1924, denying his motion for a rehearing.

*Stewart & Shearer* [*John W. Davis* of counsel; *George L. Shearer* and *M'Cready Sykes* with him on the brief], for the plaintiff.

*George P. Nicholson, Corporation Counsel* [*William H. King* of counsel; *Eugene Fay* with him on the brief], for the defendants.

DOWLING, J.:

These are cross-appeals, the relator appealing from so much of the order as determines that the amount of the assessment against him should be reduced to $149,205.57, and claiming that the same should be entirely canceled, and defendants claiming that the amount of the assessment should be $151,470.34.

The defendants' contention is, that because the relator is a partner in a business which is competing with the business of National banks, and all the capital of the firm is available in conducting such operations, then all the capital of the relator, except such as is in tax exempt securities, is to be considered in whatever form it may be·on the taxable status dates, including the form of Stock Exchange membership.

Specifically it objects to the deduction of the value of Stock Exchange membership as a non-taxable item of moneyed capital.

The relator, a resident of New York, is a member of the firm of Maitland, Coppell & Co., engaged at 62 William street in a general private banking, commission and investment business, and among other activities the capital invested therein was used in discounting commercial paper, making loans on personal security with deposit of collateral, and dealing in foreign exchange. It received deposits from customers who drew thereon by check and bills of exchange, all of which operations are operations such as National banks in their general banking business conduct under the expressly conferred statutory powers.

The relator's firm also purchases for resale investment securities and subscribes for original issues of bonds in syndicate transactions.

It further appears that all of the capital invested is available for every operation of the business, the form thereof changing from day to day, and the securities consisting of bonds and stocks, which change from day to day and were available in all the business and transactions of the firm.

In so far as the defendants' appeal is concerned, I am of the opinion that the order was right for the reasons assigned in the opinion in the accompanying *Broderick* proceeding. (*People ex rel. Broderick* v. *Goldfogle*, 213 App. Div. 677.)

The relator, though conceding that certain of the activities of the firm of which he is a member were in competition with the business of National banks, contends that the court erred in including in the assets of this relator subject to tax certain items which either were not moneyed capital or were not moneyed capital coming into competition with the business of National banks.   These items are:

1. Cash deposited in National banks, $104,818.07.

2. Cash deposited with foreign bankers, $319,263.11.

3. Coffee account, $448.83.   This represents sums owing from members of the firm and employees and personal friends for coffee sold to them; it has nothing to do with banking activities, relator contends.

4. Unexpired premiums, $5,051.22.   This represents an aggregate balance of premiums for insurance and merchandise in transit paid in advance and not yet chargeable.   Relator contends this is a bookkeeping account having exclusively to do with mercantile transactions and represents no banking activity.

5. Revenue stamps, $147.62.   This cannot in any way be considered banking capital, it is claimed.

6. Corporate bonds, $1,449,490.

7. Stocks, $849,030.

8. The small item of $237.17 for " liquidation account " represents money due the firm allotted to it on partnership accounting.

As to this relator the learned court at Special Term (*sub nom. People ex rel. Broderick* v. *Goldfogle*, 123 Misc. 399) said in his opinion: .

" Applying these tests to the cases to be determined, relator Pratt owns moneyed capital in competition with National banks. His firm enjoys the use of deposits aggregating nearly $5,500,000. The capital is largely put out in loans identical in character with those appropriate to a National bank.   Between his firm and the National banks there is actual rivalry.   He cannot escape taxation merely because it is not possible with mathematical precision to ascertain what portion of the moneyed capital is applicable to competitive and what to non-competitive business.   The balance sheet of his firm must be analyzed to ascertain as exactly as may be the amount of competitive capital.   Respondents make out a *prima facie* case for taxation when they show the actual competition and the amount of moneyed capital at the disposal of that competitive business.   Certain items are clearly to be eliminated.   If there be any ground for eliminating other items, it was primarily and peculiarly within the knowledge of relator and evidence to that effect should have been adduced by him. Certain of the assets are corporate stocks.   While a National bank

cannot buy and own corporate stock, it does not follow that a competitor, not subject to this prohibition, may not use this form of capital in competition with a National bank. It would defeat the purpose of the statute to permit a competitor to invest his reserves in corporate stocks, actually using them (or the loans made against them) to compete directly with a National bank, and by this indirection evade the mandate of Congress.

" The total assets of the firm were $6,726,419.72; its total liabilities were $6,214,796.70. From each of these amounts must be deducted the amount of the deposits — $5,496,550.22. From the assets must further be deducted the amount of tax exempt securities, $503,000, and under the stipulation (that the amount of indebtedness applicable to each item in the balance sheet is ninety-two and thirty-nine one-hundredths per cent of such item) there must further be deducted from the liabilities side that percentage of $503,000, or $464,721.70. There should also be deducted from the assets the value of the Stock Exchange seat, $93,000.

" A Stock Exchange seat is not capital competitive with the business of a National bank. It does not represent the investment of reserve funds. It confers a right to earn commissions for transacting business forbidden to National banks. It is wholly unrelated to the business of a bank. Deducting this $93,000 from the assets requires a corresponding deduction of ninety-two and thirty-nine one-hundredths per cent of that amount from the liabilities. The resultant computation leaves assets of $633,869.50, and liabilities of $167,602.08. The amount of competitive capital of the firm thus taxable is $466,267.42. Relator's share of this is thirty-two per cent and the assessment will be reduced and confirmed against the relator for this amount, $149,205.57. While this is slightly more than the amount stated on page 4 of the city's brief, attention of counsel is called to the fact that there is a mathematical error in the city's computation of thirty-two per cent of $482,244.72. There is no showing by the relator that any of the accounts receivable or loans are mere incidents to brokerage transactions, and I have, therefore, made no deductions for this reason."

I believe that the learned court was right in the conclusion reached by him, and that the order appealed from should be affirmed, without costs to either party.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order affirmed, without costs.